IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MICHAEL ANTHONY LESLIE,        )
                               )
              Petitioner,      )
                               )
        v.                     )        1:23CV266
                               )
STATE OF NORTH CAROLINA, et al.,   )
                               )
              Respondents.     )


**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 1.) Respondents moved to dismiss the Petition on grounds of untimeliness (Docket Entry 8; see also Docket Entry 9 (Supporting Brief)), and Petitioner responded in opposition (Docket Entry 11). For the reasons that follow, the Court should grant Respondents' instant Motion to Dismiss, and dismiss the Petition as untimely.

## I. **Procedural History**

On September 19, 2011, in the Superior Court of Scotland County, Petitioner pled guilty, pursuant to North Carolina v. Alford, 400 U.S. 25 (1970), to seven counts of first degree kidnapping, four counts of robbery with a dangerous weapon, three counts of felony conspiracy to commit armed robbery, three counts of second degree kidnapping, felony fleeing/eluding arrest with a motor vehicle, and conspiracy to commit armed robbery in cases 08CRS053314, 053315, 053317, 053319, 053321, 053323, 053325, and

053327, and 11CRS000646 through 000648. (See Docket Entry 1, ¶¶ 1, 2, 4, 5, 6; see also Docket Entry 9-2 at 2-4, 9-16.)[1] The trial court consolidated the first degree kidnapping convictions and sentenced Petitioner to 135 to 171 months' imprisonment, and consolidated the robbery with a dangerous weapon and remaining convictions and sentenced Petitioner to a consecutive term of 117 to 150 months' imprisonment. (See Docket Entry 1, ¶ 3; see also Docket Entry 9-2 at 2-11.)[2] Petitioner did not appeal. (See Docket Entry 1, ¶¶ 8, 9.)[3]

Petitioner thereafter submitted a pro se motion for appropriate relief ("First MAR") to the trial court (Docket Entry 1, ¶ 9(a)-(f); see also Docket Entry 9-5), requesting that court to modify the sentences to run concurrently instead of consecutively (see Docket Entry 9-5 at 4-5), which he dated as signed on September 12, 2019 (see id. at 6), and which that court accepted as filed on September 18, 2019 (see id. at 2). On January 24, 2020, the trial court entered an order "entitl[ing Petitioner] to a new

---

[1] Throughout this document, pin citations to page numbers refer to the page numbers that appear in the footer appended to documents upon their docketing in the CM/ECF system.

[2] On January 9, 2012, the trial court entered an amended judgment on the first degree kidnapping convictions correcting the number of days of credit for "days spent in confinement prior to the date of th[e] judgment" from 1,037 to 305. (Docket Entry 9-4 at 2 (305 days); see also Docket Entry 9-2 at 2 (1,037 days).)

[3] Although Petitioner checked the box for "Yes" in answer to the question "Did you appeal from the judgment of conviction?" (Docket Entry 1, ¶ 8), the details he provided about that "appeal" refer to a motion for appropriate relief he filed in the trial court in September 2019 (see id., ¶ 9).

2

sentencing hearing based on no finding of fact as to sentencing point for all elements of the present offense are included in prior offense." (Docket Entry 1 at 31.)

The trial court, after a hearing, entered an order on February 18, 2020, which contained the following findings of fact:

> 1. That a clerical error was made in that the proper box was not checked to reflect the finding of fact that the elements of the present offense of [r]obbery with a [d]angerous [w]eapon[ we]re included in a prior offense [Petitioner] had been convicted of on [his] prior record level worksheet by the original sentencing [j]udge . . . .
>
> 2. That a new worksheet as to [Petitioner]'s prior record level for felony sentencing and prior conviction level as they were at the time of the original sentencing . . . is to be prepared by the State.
>
> 3. That . . . the [j]udgment entered . . . wherein all [f]irst [d]egree [k]idnapping charges were consolidated for one judgment should reflect [Petitioner] as having 18 prior record level points and a prior record level of V as the elements of [f]irst [d]egree [k]idnapping were not present in a prior offense at the time of the original sentencing.
>
> 4. That the sentence entered in [the first degree kidnapping judgment] of 135 months minimum to 171 months maximum falls within the presumptive range for Class C felonies at a [prior record level of] V.
>
> 5. That considering the spirit of the negotiated plea entered in this matter, the [c]ourt will not modify the original sentence entered, but a new judgment reflecting [Petitioner] had 18 prior record level points and a [prior record level of] V shall be entered . . . .
>
> 6. That [Petitioner] is not prejudiced by the [c]ourt leaving the original negotiated plea as is.

(Docket Entry 9-6 at 2.) In light of those findings of fact, the trial court ordered that 1) "the judgment in[volving the first

3

degree kidnapping convictions ] be corrected to reflect that [Petitioner] is a [prior record level] V with 18 prior record level points as to that judgment only," and 2) "a new prior record level worksheet [] be prepared by the State and . . . the judgment in[volving the robbery with a dangerous weapon convictions ] remain as is reflecting [Petitioner a]s a [prior record level] VI with 19 prior record level points." (Id. at 3 (all caps font omitted).) In accordance with that order, the trial court entered a new judgment for the first degree kidnapping convictions listing Petitioner's prior record points as 18, and his prior record level as V. (Docket Entry 1 at 26; see also Docket Entry 9-13 at 28.) The trial court dated that new judgment February 18, 2020, but also indicated that the court entered the judgment "nunc pro tunc to [the] original judgment date of 9-19-2011." (Docket Entry 1 at 27 (all caps font omitted); see also Docket Entry 9-13 at 29 (all caps font omitted).)[4]

Petitioner submitted a second pro se motion for appropriate relief ("Second MAR") to the trial court (Docket Entry 9-7), which he dated as signed on May 19, 2022 (see id. at 6), and which that court accepted as filed on May 24, 2022 (see id. at 2). In his Second MAR, Petitioner argued that the trial court erred when

_____

[4] On February 18, 2020, the trial court also signed a new prior record level worksheet for the judgment involving the robbery with a dangerous weapon and other remaining convictions which reflected an X in the box indicating that "[t]he [c]ourt finds that all of the elements of the present offense are included in a prior offense." (Docket Entry 9-6 at 7.)

4

calculating Petitioner's prior record level at the original sentencing on September 19, 2011, by 1) counting a 2003 conviction for attempted breaking or entering in Richmond County Superior Court as a felony instead of a non-countable misdemeanor, and 2) counting a "hearsay" 1994 conviction in Oklahoma for second degree murder. The trial court apparently denied the Second MAR, but Respondents indicated that they "ha[d] coordinated with the Scotland County Clerk's Office to locate th[e trial] court's order on th[e Second MAR]," but that the order "ha[d] not been located." (Docket Entry 9 at 5 n.3.)

Petitioner then submitted a pro se petition for writ of certiorari to the North Carolina Court of Appeals ("First PWC") seeking review of the trial court's denial of his Second MAR (Docket Entry 1, ¶ 9(g); <u>see also</u> Docket Entry 9-9), which he dated as signed on June 6, 2022 (<u>see</u> Docket Entry 9-9 at 5), and which that court accepted as filed on June 8, 2022 (<u>see</u> <u>id.</u> at 2). The North Carolina Court of Appeals dismissed the First PWC without prejudice for Petitioner's failure to attach the required supporting documentation by order dated July 1, 2022. (Docket Entry 9-10.) Petitioner submitted a second petition for writ of certiorari with the North Carolina Court of Appeals ("Second PWC") (Docket Entry 9-11), dated as signed on July 25, 2022 (<u>id.</u> at 5), and filed by that court on July 28, 2022 (<u>id.</u> at 2). On August 15, 2022, the North Carolina Court of Appeals dismissed the Second PWC

without prejudice for Petitioner's failure to attach supporting documentation. (Docket Entry 9-12.) Petitioner submitted a third petition for writ of certiorari to the North Carolina Court of Appeals ("Third PWC") (Docket Entry 9-13), which he dated as signed on September 16, 2022 (id. at 5), and which that court accepted as filed on September 27, 2022 (id. at 2). The North Carolina Court of Appeals denied the Third PWC by order dated October 21, 2022. (Docket Entry 9-14.) Petitioner thereafter submitted a petition for a writ of certiorari to the North Carolina Supreme Court ("Fourth PWC") seeking review of the North Carolina Court of Appeals's denial of his Third PWC (Docket Entry 9-20), which he dated as signed on October 31, 2022 (see id. at 2), and which that court accepted as filed on November 7, 2022 (see id.). The North Carolina Supreme Court dismissed the Fourth PWC by order dated March 1, 2023. (Docket Entry 9-21.)

During the time that Petitioner sought review of the trial court's denial of his Second MAR in the North Carolina Court of Appeals, Petitioner also submitted a pro se motion for appropriate relief to the Richmond County Superior Court ("Third MAR") (Docket Entry 9-15), which he dated as signed on June 3, 2022 (id. at 5), and which that court accepted as filed on June 8, 2022 (id. at 2). In the Third MAR, Petitioner contended that 1) his 2003 conviction for felony attempted breaking or entering qualified as a misdemeanor and, thus, should not have counted in determining

6

Petitioner's prior record level, and 2) the Richmond County Superior Court lacked jurisdiction over the misdemeanor attempted breaking or entering charge. (See id. at 2-4.) The Richmond County Superior Court denied the Third MAR on June 13, 2022. (Docket Entry 9-16.) Petitioner challenged that denial by filing a petition for a writ of certiorari in the North Carolina Court of Appeals ("Fifth PWC") (Docket Entry 9-18), which he dated as signed on June 20, 2022 (see id. at 4, 5), and which that court accepted as filed on June 28, 2022 (see id. at 2). On August 26, 2022, the North Carolina Court of Appeals dismissed the Fifth PWC without prejudice for Petitioner's failure to attach required supporting documentation. (See Docket Entry 1 at 38; see also Docket Entry 9-17 at 2.)

Petitioner subsequently filed the instant Petition on March 22, 2023. (Docket Entry 1 at 14.)[5] Respondents moved to dismiss the Petition on grounds of untimeliness (Docket Entry 8; see also Docket Entry 9 (Supporting Brief)) and Petitioner submitted a response in opposition to Respondents' instant Motion (see Docket Entry 11). For the reasons that follow, the Court should grant Respondents' instant Motion, because Petitioner submitted his Petition outside of the one-year limitations period.

---

[5] Under Rule 3(d) of the Rules Governing Section 2254 Cases in United States District Courts, the Court deems the instant Petition filed on March 22, 2023, the date Petitioner signed the Petition (under penalty of perjury) as submitted to prison authorities (see Docket Entry 1 at 14).

## II. **Grounds for Relief**

The Petition asserts four grounds for relief: 1) the "state ordered a re-sentencing because of a prior record violation in the judgment," and the "state[']s claim in the re-sentencing order shows the claim exist [sic], but no action was discovered taken" (Docket Entry 1, ¶ 12(Ground One) (standard capitalization applied)); 2) the trial court improperly "use[d ] an out of state offense of 2nd degree murder and its classification over the years, prior record wise" (id., ¶ 12(Ground Two) (standard capitalization applied)); 3) "an offense of att[empted] breaking and entering was not a felony by statute" (id., ¶ 12(Ground Three) (standard capitalization applied)); and 4) "[Petitioner's] prior record was hearsay and should not have been allowed" (id., ¶ 12(Ground Four) (standard capitalization applied)).

## III. **Discussion**

Respondents move for dismissal of the Petition on the grounds that the Petition was filed outside of the one-year limitations period of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), see 28 U.S.C. § 2244(d)(1). (See Docket Entry 9 at 10-21.) In order to assess Respondents' statute of limitations argument, the Court must first determine when Petitioner's one-year period to file his Petition commenced. The United States Court of Appeals for the Fourth Circuit has explained:

8

Under § 2244(d)(1)(A)-(D), the one-year limitation period begins to run from the latest of several potential starting dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Green v. Johnson, 515 F.3d 290, 303-04 (4th Cir. 2008). The Court must determine timeliness on claim-by-claim basis. See Pace v. DiGuglielmo, 544 U.S. 408, 416 n.6 (2005).

Respondents argue that subparagraphs (B) and (C) do not apply, because "[t]he [P]etition does not suggest that its filing was delayed by any governmental impediment or that the filing was based on a new right made retroactive." (Docket Entry 9 at 11.) Respondents further assert that subparagraph (D) remains inapplicable, because "none of the grounds raised in the [P]etition have any post-trial factual predicate: all four grounds allege errors made by the trial court during initial sentencing, and which

9

would be apparent by a review of the record in this case." (Id. (citing Docket Entry 9-2 at 1, 4-6).) Respondents thus contend that the Petition qualifies as untimely under subparagraph (A), because Petitioner's convictions finalized on January 24, 2012, "after he failed to give oral notice of appeal and failed to file a written notice of appeal with the clerk within [14] days after the final entry of [the amended] judgment" on January 9, 2012. (Docket Entry 9 at 12 (citing N.C. R. App. P. 4(a)(1)-(2) (allowing 14 days to appeal from criminal judgment).) Thus, according to Respondents, AEDPA's limitations period expired on January 25, 2013, over ten years before Petitioner submitted the instant Petition to prison authorities on March 22, 2023. (See id.) Respondents further maintain that the re-sentencing judgment on February 18, 2020, "correct[ed ] a clerical error *nunc pro tunc* [and] did not restart the judgment deadline" (id. at 13 (bold font omitted)), because "[a] *nunc pro tunc* judgment allows a court to correct a clerical mistake while maintaining the original date of judgment" (id. at 14 (citing State Trust Co. v. Toms, 244 N.C. 645, 650 (1956), Creed v. Marshall, 160 N.C. 394, 397 (1912), and Galloway v. McKeithan, 27 N.C. 12, 13 (1844))).

Petitioner contends that the Petition qualifies as timely under subparagraph (D), because "this matter was newly discovered and filed upon post conviction challenges and incorporated by its findings herein." (Docket Entry 1, ¶ 18 (standard capitalization

10

applied); see also Docket Entry 11 at 3 (arguing that, where Petition "clearly shows merit" and alleges "newly discovered" claims, "state or hebeas [sic] limitation can't deined [sic], dismissed or just not answer [sic]" (standard capitalization applied)), 7 ("[T]his Court[,] as well as the Attorney General, should see that the very limitation should not aply [sic], when such abuse is newly discovered and there has been no change in Petitioner's sentence[.]" (standard capitalization applied)).)

A.    <u>Ground One</u>

Ground One asserts that the "state ordered a re-sentencing because of a prior record violation in the judgment," and the "state[']s claim in the re-sentencing order shows the claim exist [sic], but no action was discovered taken." (Docket Entry 1, ¶ 12(Ground One) (standard capitalization applied).) Although that argument lacks clarity, Petitioner appears to fault the trial court for correcting errors in his prior record points and prior record level with regard to his first degree kidnapping convictions at his re-sentencing on February 18, 2020, but not taking any further action with regard to his sentences. (See id.) As a result, Plaintiff could not have learned of the factual predicate of Ground One any earlier than February 18, 2020, and, thus, with regard to Ground One, subparagraph (D) applies.

Ground One, however, remains time-barred under subparagraph (D). The limitations period under subparagraph (D) began to run on

February 18, 2020, and then continued to run, unimpeded, until it expired on February 18, 2021.  Petitioner did not submit his instant Petition to prison authorities until March 22, 2023 (see Docket Entry 1 at 14), over two years out of time.  Moreover, as detailed above, Petitioner's Second and Third MARs and five PWCs did not toll the limitations period, because Petitioner filed those documents from May 24, 2022, to November 7, 2022 (Docket Entries 9-7, 9-9, 9-11, 9-13, 9-15, 9-18, 9-20), over one year after the one-year statute of limitations under subparagraph (D) had already run, and those belated filings could not toll the limitations period, see Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000) (finding that state filings made after expiration of federal limitations period do not restart or revive that period).[6]

---

[6] Ground One also remains unexhausted, as Petitioner neither appealed from the re-sentencing judgment on February 18, 2020, nor filed a MAR challenging the trial court's decision not to alter his original sentences (see Docket Entries 9-7 (Second MAR not raising such claim), 9-15 (Third MAR not arguing that matter)).  See Howard v. Lassiter, No. 1:12CV453, 2013 WL 5278270, at *2 n.3 (M.D.N.C. Sept. 18, 2013) (unpublished) ("Petitioner has failed to exhaust his state court remedies . . . as he did not raise [the claim] on direct appeal or via [MAR] in the state courts." (citing cases)), recommendation adopted, 2013 WL 5461847 (M.D.N.C. Sept. 30, 2013) (unpublished) (Osteen, Jr., C.J.), appeal dismissed, 551 F. App'x 84 (4th Cir. 2014).  Additionally, Ground One qualifies as non-cognizable, as Petitioner challenges the trial court's decision, pursuant to North Carolina sentencing laws and the plea agreement, not to alter Petitioner's sentences at re-sentencing (see Docket Entry 1, ¶ 12(Ground One); see also Docket Entry 9-6 (2/18/20 re-sentencing order)), and does not allege that the trial court's decision to leave in place Petitioner's original sentences violated federal law or the United States Constitution in any manner (see Docket Entry 1, ¶ 12(Ground One).  See 28 U.S.C. § 2254(a) ("[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." (emphasis added)); see also Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("We have stated many times that 'federal habeas corpus does not lie for errors of state law.'" (emphasis added) (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990))).

B.  <u>Grounds Two through Four</u>

Grounds Two through Four of the Petition maintain that the trial court improperly "use[d ] an out of state offense of 2nd degree murder and its classification over the years, prior record wise" (Docket Entry 1, ¶ 12(Ground Two) (standard capitalization applied)), that Petitioner's prior "offense of att[empted] breaking and entering was not a felony by statute" (id., ¶ 12(Ground Three) (standard capitalization applied)), and that "[Petitioner's] prior record was hearsay and should not have been allowed" (id., ¶ 12(Ground Four) (standard capitalization applied)).  All three of those grounds for relief challenge the trial court's calculation of Petitioner's prior record points and prior record level at sentencing on September 19, 2011.

Subparagraph (D) does not apply because, through the exercise of due diligence, Petitioner should have learned of the factual predicate of Grounds Two through Four, at the latest, at the time of his guilty pleas and sentencing on September 19, 2011.  As Section III ("STIPULATION") of the prior record level worksheet reflects, "[t]he prosecutor and defense counsel . . . stipulate to the information set out in Sections I [(containing the prior record points calculation)] and IV [(listing Petitioner's prior convictions)] of this form, and agree with [Petitioner]'s prior record level or prior conviction level as set out in Section II based on the information herein."  (Docket Entry 9-2 at 6 (periods

13

omitted).)  Section IV clearly lists Petitioner's prior conviction in Richmond County on February 27, 2003, for attempted breaking or entering a building as a <u>Class I felony</u> (<u>id.</u>), and Petitioner's prior conviction for second degree murder in Oklahoma in 1994 as a <u>Class I felony</u> (<u>id.</u> at 7).  The Stipulation contains the signatures of the prosecutor and of Petitioner's trial counsel, both dated <u>September 19, 2011</u>.  (<u>Id.</u>)

Although Petitioner characterizes his grounds for relief as "newly discovered" (Docket Entry 1, ¶ 18; <u>see also</u> Docket Entry 11 at 3, 7), under subparagraph (D), the one-year limitation begins when the factual predicate of a claim "could have been discovered through the exercise of due diligence," 28 U.S.C. § 2244(d)(1)(D), and not upon its actual discovery, <u>see</u> <u>Schlueter v. Varner</u>, 384 F.3d 69, 74 (3d Cir. 2004) ("By its language, the one-year period of limitation commences under [S]ection 2244(d)(1)(D) when the factual predicate of a claim could have been discovered through the exercise of due diligence, not when it actually was discovered."); <u>Johnson v. Polk</u>, No. 1:07CV278, 2008 WL 199728, at *3 (M.D.N.C. Jan. 22, 2008) (unpublished) (Tilley, J., adopting recommendation of Sharp, M.J.) ("Under 28 U.S.C. § 2244(d)(1)(D), the limitations period begins to run when the petitioner knows, or through due diligence could discover, the important facts underlying his potential claim, not when he recognizes their legal significance.").  Moreover, in his filings, Petitioner does not

14

state <u>when</u> or <u>how</u> he supposedly first discovered the trial court's alleged errors regarding his prior felony breaking or entering and second degree murder convictions. (<u>See</u> Docket Entries 1, 11.) Absent such allegations, Petitioner has not demonstrated the necessary due diligence for application of subparagraph (D). <u>See</u> <u>DiCenzi v. Rose</u>, 452 F.3d 465, 471 (6th Cir. 2006) ("[T]he petitioner bears the burden of proving that he exercised due diligence, in order for the statute of limitations to begin running from the date he discovered the factual predicate of his claim . . . ."); <u>see also</u> <u>Freeman v. Zavaras</u>, 467 F. App'x 770, 775 (10th Cir. 2012) (refusing to apply subparagraph (D) where the petitioner failed to explain why he could not have discovered factual predicate of claim earlier); <u>Farabee v. Clarke</u>, No. 2:12CV76, 2013 WL 1098098, at *3 (E.D. Va. Feb. 19, 2013) (unpublished) (finding subparagraph (D) inapplicable where the petitioner's "threadbare" allegations failed to explain inability to discover predicate earlier), <u>recommendation adopted</u>, 2013 WL 1098093 (E.D. Va. Mar. 13, 2013) (unpublished); <u>Frazier v. Rogerson</u>, 248 F. Supp. 2d 825, 834 (N.D. Iowa 2003) (refusing to apply subparagraph (D) when the petitioner "never identifie[d] when or how he discovered his 'new evidence'"). Accordingly, subparagraph (D) does not apply to Grounds Two through Four.

Turning to subparagraph (A), Grounds Two through Four qualify as untimely under that subparagraph, regardless of whether the

Court construes the date of the trial court's re-sentencing judgment as February 18, 2020, or nunc pro tunc to September 19, 2011. If the Court finds that the re-sentencing judgment "merely corrected a clerical error and did not constitute a new judgment" (Docket Entry 9 at 15), then Petitioner's convictions finalized on January 24, 2012, after Petitioner failed to appeal during the 14-day period to appeal from the amended judgment on January 9, 2012, see Gonzalez v. Thaler, 565 U.S. 134, 149-50 (2012) (holding that a petitioner's case becomes final when the time for pursuing direct review expires); see also N.C. R. App. P. 4(a)(2) (allowing 14 days to appeal from criminal judgment). Petitioner's one-year period then ran, unimpeded, from January 24, 2012, until it expired one year later on January 24, 2013. Petitioner did not file his instant Petition until March 22, 2023 (Docket Entry 1 at 14), over ten years out of time. Furthermore, as discussed above, Petitioner's three MARs and five PWCs did not toll the limitations period, because Petitioner filed those documents from September 2019 to November 2022, long after AEDPA's one-year statute of limitations had already run, and those belated filings could not toll the limitations period, see Minter, 230 F.3d at 665 (finding that state filings made after expiration of federal limitations period do not restart or revive that period).

If, on the other hand, the Court should find that the re-sentencing judgment dated February 18, 2020, constituted a new

16

judgment, Grounds Two through Four would remain time-barred under subparagraph (A). As stated above, Petitioner did not appeal from the re-sentencing judgment, and, thus, that judgment finalized 14 days later on March 3, 2020. See Gonzalez, 565 U.S. at 149-50 (holding that a petitioner's case becomes final when the time for pursuing direct review expires); see also N.C. R. App. P. 4(a)(2) (allowing 14 days to appeal from criminal judgment). The limitations period then ran continuously from March 3, 2020, until it expired on March 3, 2021. Moreover, Petitioner's Second and Third MARs and five PWCs did not toll the limitations period, as Petitioner filed all of those documents after the limitations period had already expired (see Docket Entries 9-7, 9-9, 9-11, 9-13, 9-15, 9-18, 9-20). See Minter, 230 F.3d at 665 (finding that state filings made after expiration of federal limitations period do not restart or revive that period).

C. Equitable Tolling

Lastly, in Petitioner's response in opposition to Respondents' instant motion, he argues that the Petition "should not be dismissed because of [the] time limit" because 1) his "habeas is a matter of law and sentencing in violation of prior record abuse[,]" 2) "it violates the 5th, 8th and 14th amendment [sic] of the [United States C]onstitution[,]" 3) "it violates [North Carolina C]onstitution and Laws Art[icle] 1-19-23[,]" and 4) "it violates [North Carolina's] own statute incorporated and Rule of Evid[ence]

17

803[.]" (Docket Entry 11 at 1; <u>see also</u> <u>id.</u> at 2 ("Petitioner say [sic] a correction of sentence is warranted on the merits therefore the limitation does not apply if that sentence violates due process of the law and constitution and North [C]arolina law . . . .").) Affording Petitioner's assertions the liberal construction due a pro se litigant, <u>see generally</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007), the Court could interpret those assertions as an argument that equitable tolling should apply because Petitioner believes his claims have merit. The United States Supreme Court has ruled that equitable tolling applies to the limitations period under AEDPA, but that a petitioner must show "'(1) that he has been pursuing his rights <u>diligently</u>, and (2) that some <u>extraordinary</u> circumstance stood in his way' and prevented timely filing." <u>Holland v. Florida</u>, 560 U.S. 631, 649 (2010) (quoting <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005)) (emphasis added). Petitioner's belief in the merits of his underlying claims, however, demonstrates neither diligence in pursuing his claims in a timely manner, nor an extraordinary circumstance that prevented him from timely submitting the Petition. <u>See</u> <u>Paniagua v. Dail</u>, No. 1:12CV1253, 2013 WL 4764586, at *3 (M.D.N.C. Sept. 4, 2013) (unpublished) ("[The p]etitioner [] contends that the one-year limitations period does not bar the [ p]etition because [he is] fighting the enhancement of [his] sentence and the wrongful conviction under a statute not imposed, but dismissed according to plea

18

agreement . . . . This contention appears to represent an argument that the underlying merit of his claims should constitute sufficient grounds for equitable tolling, something which controlling authority prohibits. <u>See</u> <u>Rouse v. Lee</u>, 339 F.3d 238, 251 (4th Cir.2003) ('[W]e see no reason why the decision as to whether a court considers the claims in an untimely petition should depend on the nature of the claims in the petition.')[.]" (internal quotation marks, brackets, and some citations omitted)), <u>recommendation adopted</u>, 2013 WL 5462283 (M.D.N.C. Sept. 30, 2013) (unpublished) (Schroeder, J.).

Accordingly, Petitioner has not provided any basis for equitable tolling of the limitations period, and the Petition faces a time bar under AEDPA.

### IV. <u>Conclusion</u>

The statute of limitations bars the Petition.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion to Dismiss (Docket Entry 8) be granted, that the Petition (Docket Entry 1) be dismissed, and that a judgment be entered dismissing this action, without issuance of a certificate of appealability.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

January 25, 2024